## MINDER & JORGENSON LAND CO v. BRUSTUEN.

An agent to procure a purchaser for land to be paid for in merchandise at the wholesale price thereof did not comply with his contract, where the owners of the merchandise were unable or refusd to produce invoices showing the cost price of the goods, or any data from which the wholesale price could be determined.

Where the only allegation of the complaint of a promise relied upon by plaintiff for his reimbursement of a sum claimed to have been advanced for defendant was that defendant had agreed to deed him land to enable him to raise such sum on a mortgage, but failed to do so, and there was no allegation that defendant had agreed to repay plaintiff the amount, evidence to establish the latter was properly excluded.

A contract to be binding on a party alleged to have ratified it must have been executed by the agent in the name of, or on behalf of, such party.

Haney, J., dissenting.

(Opinion filed, Jan. 19, 1910.)

Appeal from Circuit Court, Roberts County. Hon. J. H. McCoy, Judge.

Action by the Minder & Jorgenson Land Company against Ole P. Brustuen. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Affirmed.

*Jorgenson & McNaghten,* for appellant. *Frank McNulty,* for respondent.

CORSON, J. This case is before us on an appeal by the plaintiff from a judgment on a directed verdict in favor of the defendant.

It is alleged in the complaint: "That on or about the 22d day of January, 1907, the defendant herein entered into an agreement in writing with the plaintiff herein, wherein and whereby, among other things, the said defendant agreed as follows: That if the city of Milbank, county of Grant, state of South Dakota. * * * And it is mutually agreed that in the event the stock of goods hereinbefore mentioned and described should exceed the sum of $6,000 in value at their invoice and wholesale value [certain proceedings are to be taken to ascertain the value.] * * * It is mutually agreed between said parties that 3¼ per cent. shall be added to the wholesale price of said good to compensate the parties of the second part for freight and drayage expended and that this percentage shall be added to the wholesale price of the goods taken to make up the sum of $6,000. * * * It is further agreed between said parties that the party of the first part shall make a loan upon the land herein described in the sum of $2,000 and said $2,000 shall be paid over to the parties of the second part in cash. * * * It is further mutually agreed and understood that the merchandise hereinbefore described, shall not be removed from the said telephone block building until such time as the party of the first part shall furnish and deliver said warranty deed and an abstract showing good and sufficient title to the land hereinbefore described." Appended to this contract is the following: "I hereby ratify the contract made between the Minder & Jorgenson Land Company and Preiss Brothers, February 9th, 1907, for the purchase of said stock and accept the sureties on this bond. [Signed] Ole P. Brustuen."

It is disclosed by the record that a bond was executed by Preiss Bros., with Minder & Jorgenson Land Company and L. H. Bentley as sureties, agreeing to pay to the defendant Brustuen any damages that he might sustain by reason of any incumbrances on said stock of goods, which bond was executed on the 12th day of February, 1907.

At the close of all the evidence, the plaintiff made a motion for the direction of a verdict in its favor, which was denied by the court, and thereupon the defendant made the following

motion for the direction of a verdict: "The defendant moves
the court to instruct the jury to return a verdict for the de-
fendant upon all the issues for the following reasons: First,
that there is no evidence in the record or produced to the jury
whatever bearing upon the second count of the complaint;
second, that, as to the first count of the complaint, the evidence
failed to show that the plaintiff produced or procured a pur-
chaser for the land ready, willing, and able to perform the con-
tract, and for the further reason that the undisputed evidence
shows that the stock of goods referred to in the complaint was
not invoiced to the defendant, and that the owner thereof, Preiss
Bros., refused to produce invoices showing the cost price of the
goods, and therefore defeated the sale and refused to carry out
the terms of the contract, and refused to invoice the goods, and
were not in a position to furnish any evidence or data from
which the wholesale price of the goods could be determined, and
that no goods were ever sold or delivered to the defendant."
This motion was granted by the court, and verdict and judgment
were rendered in favor of the defendant.

It will be observed that in the complaint it alleged that there
was a contract entered into between the defendant Brustuen, and
the plaintiff, by the terms of which the defendant agreed with the
plaintiff, in case it procured a purchaser for his property for
$3,900 net cash, the plaintiff was to have all he could obtain over
that the sum as a commission; that it is further alleged that subse
quently that contract was modified by an oral agreement that if
the plaintiff should procure a purchaser for the land for $5 more
per acre, or $5,100, the defendant would accept the payment of
the $5,100 dry goods; that thereupon the plaintiff entered into
the contract above referred to with Preiss Bros. for a sale of the
land to them for a stock of dry goods of the value of $6,000,
at the wholesale invoice price, with 3¼ per cent. added thereto
for the expense of freight, etc.

It is disclosed by the evidence that the plaintiff, together
with the defendant, Brustuen, commenced invoicing the goods in
the store at Milbank, that no wholesale invoice value was fur
nished by Preiss Bros., and that thereupon the defendant, Brus

tuen, requested them to produce their wholesale invoice price lists. This the Preiss Bros. refused, claiming that they were not required to produce any such price lists, and thereupon the defendant, Brustuen, declined to go any farther with the contract, and left the store and the stock of goods, and had nothing farther to do with it; and what subsequently became of the goods does not appear from the record. On the trial of the case it was claimed by the plaintiff that at about the time he and the defendant, Brustuen, commenced to invoice the goods in the store he advanced to Preiss Bros. the sum of $2,500, but the testimony offered by the plaintiff to prove this fact was objected to by counsel for the defendant and excluded by the court. The question and objection are as follows: "Q. You may state, Mr. Jorgenson, whether or not you had any talk with the defendant, Brustuen, relative to the $2,500 at or about the time, Exhibit 3, being the bond, was executed?" This question was objected to as "immaterial, irrelevant, and for the reason, first, that the plaintiff was to advance $2,500, and that no obligation rests upon the defendant to pay any money; and, second, that the plaintiff in this action seeks to recover, not for the advancement of money, but for the breach of an alleged obligation to convey land for the purpose of enabling the plaintiff to mortgage it, therefore immaterial." This objection was sustained by the court, and the plaintiff then made the following offer: "The plaintiff now offers in evidence Exhibits 4 and 5 for the purpose of completing the offer we expected to make in connection with it. Plaintiff now offers to prove by the witness on the stand in connection with Exhibits 1 (the original contract), 2 (the contract between plaintiff and Preiss Bros.), 3 (the bond referred to), which have already been received in evidence, and by Exhibits 4 and 5, which are now offered in evidence, that the $2,500 referred to by the witness and represented by Exhibit 4 and mentioned in Exhibit 5 was paid over by the witness as plaintiff's agent to Preiss Bros., at the request of the defendant, and that no part of said sum has ever been repaid to the plaintiff, and that the payment thereof has been demanded by the plaintiff of the defendant." To which offer the defendant objected for the reasons before

stated, and for the reason that it is immaterial and irrelevant; this action being for damages on account of the alleged breach of contract to convey real estate by the defendant to the plaintiff, and not for the recovery of money advanced for the defendant. This objection was sustained by the court. Plaintiff then made the following offer: "Plaintiff further offers to prove that after the payment of the $2,500 to Preiss Bros., evidenced by Exhibit 4, that the defendant took possession of the stock of goods mentioned in Exhibits 2 and 3." To which the defendant objected for the reason that the same was immaterial, irrelevant, and for the same reasons heretofore stated, and for the further reason that the fact of the partial performance of an oral contract for the conveyance of real estate is incompetent, irrelevant, and immaterial in an action except one brought as an equitable action for the purpose of compelling the specific performance of a contract under the statute. To this offer the court ruled as follows: "By the Court: So far as it relates to the second cause of action, it may be sustained and overruled as to any bearing it may have on the first cause of action."

It is contended by the appellant that the court erred in excluding this evidence, and that, had the same been admitted, both the plaintiff's causes of action would have been established, or, at least, there would have been evidence before the jury from which they might have found that the plaintiff was entitled to recover upon both causes of action. It is insisted, however, in support of the court's ruling, that, as to the first cause of action, the plaintiff had failed to prove that the alleged first modification of the contract had ever been executed for the reason that it had failed to show that it had produced a purchaser, able, ready, and willing to deliver a stock of goods of the value of $6,000 wholesale invoice price, with $3\frac{1}{4}$ per cent. added, and therefore the said modification not being in writing was void under our statute (Sec. 1287 of the Civil Code), which provides that no change or modification of a written contract can be made by an oral contract unless the same has been executed. The defendant further insists that he was not bound by the contract entered into between the plaintiff and Preiss Bros.

for the reason that he was not a party thereto, and it was not entered into or executed by the plaintiff as his agent, and that the purported ratification of the contract between the plaintiff and Preiss Bros. was not binding upon him, as there was no contract purporting to be made by the plaintiff as his agent to be ratified. It is further insisted by the defendant, assuming that he was bound by that contract, he was not liable for any money paid thereon, as the contract distinctly specifies that the plaintiff shall raise $2,500 by mortgage on the property, and pay the same over to Preiss Bros., and then transfer to them the property subject to the mortgage. We are inclined to take the view that the court was right in excluding all the evidence in reference to the payment of the $2,500 to Preiss Bros., as under no view of the case was the defendant liable to pay any money to Preiss Bros. Assuming that he was bound by the contract between the plaintiff and Preiss Bros., he was only bound to convey the property to the plaintiff when a purchaser had been produced able, ready, and willing to transfer to him the merchandise of the wholesale value of $6,000, with the $3\frac{1}{4}$ per cent. added thereto, and there was no evidence introduced on the part of the plaintiff showing that it had produced any such purchaser.

In the testimony of Mr. Louis Preiss introduced on the part of the plaintiff he testified, among other things, that: "Since the time that Mr. Brustuen and others invoiced the goods in question, we disposed of the entire stock except the goods that were invoiced. Those were left in the store. In making the invoice and fixing the prices of the goods, we did not use statements from the wholesale houses. We fixed the prices by using the marks on the goods. Some of the goods were marked by us and some by Stone and Sullivan. So far as the cost price was concerned, the marks by Stone and Sullivan was the only knowledge or information that we had as to their cost price, and what they told us the cost price. We did not offer Mr. Brustuen a bill of sale." Brustuen testifying in his own behalf, testified as follows: "I went down to Milbank to invoice certain goods I did not examine the goods. I put down the prices as they called them off. The price called off was their mark. I have not taken

any of the goods from the store there. I was in Preiss Bros.' store on the 14th day of February, the day after the invoicing. I called there quite early in the morning. 'I called for the invoice bill. I wanted to check off the goods; that is, the bill from the wholesale house, the wholesale price of the goods, what they cost, or the regular wholesale price value. I told them I had to have the bill for the goods so I could check them off and pack them away, and they said, 'They did not have it,' and did not produce the bill. I asked them to produce it. I said I wanted the invoice bill of these goods so I could check them over and pack them away, and they said, 'They did not have to produce the bill,' and I said, 'You can read the written contract and see whether you have to or not, and here it says, "Goods to be taken at wholesale invoice price." '. They said: 'They did not have to and did not want to.' I did not go on with the inventory, because I could not take the stuff at their own figures, and I did not have to, according to the written contract." The evidence of Mr. Brustuen was corroborated by Mr. Hagen and Paul Emerson, and was not controverted, as will be seen, by the plaintiff. It will thus be seen that there was no evidence offered or received showing or tending to show what the wholesale price of the merchandise involved in this case was, or whether or not the marks on the goods were greater or less than the wholesale price, or how much. There was no evidence offered or received showing that the wholesale value of the goods which Preiss Bros. had in their store at Milbank was, or whether the wholesale value of said goods was greater or less than $5,100, and there was no evidence offered or received showing what kind of goods Preiss Bros. had in their store, or how much of any kind of goods there was in said store. It is quite clear, therefore, that the allegations of the complaint that the plaintiff had produced a purchaser ready, able, and willing to comply with the terms of the alleged contract between the plaintiff and Preiss Bross. were not sustained by the evidence, and consequently the plaintiff failed to show any right of recovery under his first cause of action, either under the original contract or the contract as it was alleged to have been modified, as the undisputed evidence shows

that the stock of goods referred to in the complaint was not invoiced to the defendant at their wholesale value with $3\frac{1}{4}$ per cent, added, and that the owners thereof, Preiss Bros., were unable or refused to produce the invoice showing the cost price of the goods or any data from which the wholesale price of the goods could be determined, and clearly under the second cause of action alleged the plaintiff was not entitled to recover as the defendant had never contracted or agreed to pay Preiss Bros. or the plaintiff any sum in money whatever. All that he had agreed to do in any event, even assuming that the contract between the plaintiff and Preiss Bros. was binding upon him, was to convey the property. But, as will be observed, there is nothing in the contract requiring him to convey the property to the plaintiff, and no contract in writing was given in evidence proving or tending to prove that the defendant had agreed to convey the property, either to the plaintiff or Preiss Bros. As will be noticed, it is alleged in the complaint that "the defendant agreed that, in consideration thereof, he would deed to the plaintiff the land hereinbefore described in order that the plaintiff might procure a loan on said land to the amount of $2,500 to reimburse it for the $2,500 to be advanced for the defendant, and, after securing the said $2,500, the plaintiff was to deed the said land to the party of whom the defendant had purchased the said goods and merchandise as provided in the contract which the defendant had so accepted as aforesaid." The plaintiff further alleges: "That, relying upon said promise and agreement, the plaintiff advanced to the defendant the said sum of $2,500 on February 12, 1907." Clearly, therefore, under the allegations of the complaint, all the promises that the plaintiff relied on for his reimbursement of the $2,500 which he claims to have advanced to Preiss Bros. was that defendant should deed to him the premises to enable him to raise the $2,500 on mortgage. There is no allegation in the complaint that the defendant agreed to repay to the plaintiff the amount of $2,500 which he claims to have advanced to Preiss Bros.

This brings us to a consideration of the effect of the alleged ratification by the defendant of the contract entered into between

the plaintiff and Preiss Bros. It is contended by the defendant that as the contract entered into by the plaintiff with Preiss Bros. was in the name of the plaintiff, and that the same does not purport to be made by the plaintiff for or on behalf of the defendant, the alleged ratification was ineffectual in binding the defendant to the terms thereof. We are inclined to take the view that the defendant is right in his contention. A contract, to be binding upon the party alleged to have ratified it, must have been executed by the agent in the name of, or for, or on behalf of, the party sought to be charged by reason of his ratification. The nature of ratification is thus defined in 1 Am. & Eng. Encyc. of Law, 1181: "Ratification as it relates to the law of agency is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority." The Court of Appeals of New York in Hamlin v. Sears, 82 N. Y. 327, in discussing the question of ratification, says: "But the doctrine properly applies only to cases where one has assumed to act as agent for another, and then a subsequent ratification is equivalent to an original authority." It will be observed that in the case at bar the plaintiff did not assume to act as the agent of the defendant, and that no reference is made to the defendant in any part of the contract. It is clear, therefore, that the alleged ratification of the defendant appended to the contract between the plaintiff and Preiss Bross, was ineffectual for any purpose. See section 1680 of the Civil Code.

The learned counsel for the appellant contends that under the decision of this court in Mattes v. Engel, 15 S. D. 330, and other cases cited by the appellant, the plaintiff having entered into a contract with Preiss Bros. binding them to convey a stock of good at the wholesale invoice price, he was not responsible for their failure to comply with their contract, and notwithstanding their failure was entitled to recover his commissions from the sale of the property, but the facts in the case at bar do not bring it within the case of Mattes v. Engel and similar cases. In that case the contract entered into was by the owner of the land with the purchaser, and this court held: "An agent

empoyed to sell a mine, having found a customer with whom the owner made a contract of sale, is entitled to his commissions, in the absence of agreement to the contrary, though the contract was not specifically enforceable, and was canceled by the parties thereto." But in the case at bar, as before stated, the defendant entered into no contract with Preiss Bros. either directly or indirectly, and the plaintiff did not in its contract with Preiss Bros. assume to act as the agent of the defendant. Clearly, therefore, the defendant in this case had entered into no contract in writing binding himself to convey the property to the plaintiff, and under no theory of the case presented was the plaintiff entitled to recover in this action.

Numerous other errors are assigned, but in the view we take of the case they do not possess sufficient merit to require a separate discussion.

Finding no error in the record the judgment of the court below and order denying a new trial are affirmed.

HANEY, J., dissenting. McCOY, J., taking no part in this decision.